UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XL Specialty Insurance Company,<br><br>     Plaintiff,<br><br>-against-<br><br>Ideal Stamp Company and Inter Governmental Philatelic Corp., d/b/a Imperial Mint,<br><br>     Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>Case No. _____ |

Plaintiff XL Specialty Insurance Company ("XL Specialty"), by its attorneys Mound Cotton Wollan & Greengrass LLP, as and for its Complaint for Declaratory Judgment against defendants Ideal Stamp Company ("Ideal Stamp") and Inter Governmental Philatelic Corp. d/b/a Imperial Mint ("IGPC") (together "Defendants"), allege upon information and belief as follows:

## INTRODUCTION

1. XL Specialty seeks a declaration pursuant to 28 U.S.C. Section 2201(a) rescinding policy number UMA0017371SP23A, effective December 28, 2023 to December 28, 2024, issued to Defendants (the "Policy") and finding the Policy to be void *ab initio*.

2. XL Specialty seeks rescission based on material misrepresentations and/or material omissions made by Defendants in procuring the Policy. Had XL Specialty been aware of the true facts, it would not have issued any policy to Defendants or would not have issued the Policy.

3. Alternatively, if the Policy is not rescinded, XL Specialty seeks a declaration that there is no coverage under the Policy based on Defendants' breach of certain Policy terms, conditions, and exclusions.

1

4. An actual controversy exists between XL Specialty and Defendants concerning the parties' respective rights and obligations under the Policy.

## PARTIES

5. XL Specialty is a Delaware corporation with its principal place of business in Stamford, Connecticut.

6. Upon information and belief, Ideal Stamp is a New York company with its principal place of business in Brooklyn, New York.

7. Upon information and belief, IGPC is a New York corporation with its principal place of business in Brooklyn, New York.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between XL Specialty and Defendants and the amount in controversy exceeds $75,000 exclusive of costs.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) based on the residence of Defendants and under 28 U.S.C. § 1392(b)(2) because a substantial part of the events giving rise to this action occurred in the Eastern District of New York.

## BACKGROUND

## INSURANCE APPLICATION & POLICY

10. On November 7, 2019, Defendants submitted an insurance application to XL Specialty.

11. On the FACE Insurance Services form, Defendants identified their "Gallery," located at 172 Empire Blvd, Brooklyn, and two "Other Named Locations," one at 32 Jefferson St., Monticello, New York ("Storage location"), and another at 756 Eastern Parkway, Brooklyn, New

York ("Executive residence where inventory is stored"). Defendants represented that the average and maximum monthly total value of the inventory on premises at the "Other Locations" was $15 million:

| | Owned (selling price) | Consigned |
|---|---|---|
| **Average** Monthly Total Value of Inventory on Premises: | | |
| At Gallery: | $5,000,000.00 | |
| At Other Locations (storage, etc.) | $15,000,000.00 | |
| **Maximum** Monthly Total Value of Inventory on Premises: | | |
| At Gallery: | $5,000,000.00 | |
| At Other Locations (storage, etc.) | $15,000,000.00 | |

Other Named Locations: (Describe use, etc.):
1. 32 Jefferson St Monticello NY 12701 - Storage location
2. 756 Eastern Parkway Brooklyn NY 11213 - Executives residence, where inventory is stored

12. Defendants further represented that the highest priced item for sale was $1,000, that the average price of items for sale was $10, and that the inventory was valued according to "market value."

| Date of last inventory: | | Highest Priced item for sale: $1,000.00 |
|---|---|---|
| Average price of items for sale: $10.00 | | How is inventory valued: Market Value |

13. Defendants' representations to XL Specialty in November 2019 were consistent with earlier statements they made to XL Specialty through their broker regarding the total inventory valuation among the three locations: "172 Empire has about $5 mil max, 32 Jefferson has between $10-15mm, Eastern Parkway address is very minimal temporary storage."

14. Thereafter, XL Specialty provided a "New Submission Quote" setting out various proposed terms, including a maximum policy limit of $15 million per occurrence for the "Named Locations." The New Submission Quote expressly stated that the terms were "[b]ased on the information provided" and "[s]ubject to … no material changes."

3

15. Defendants accepted the terms and XL Specialty bound coverage effective December 28, 2019 – December 28, 2020.

16. In the following years, including 2023, XL Specialty provided a "Renewal Quote" with proposed terms, including a maximum policy limit of $15 million per occurrence for the "Named Locations." The 2023 Renewal Quote expressly stated that the terms were "[b]ased on the information provided" and "[s]ubject to … no material changes."

17. Based on Defendants' affirmative representations in the original application and their subsequent confirmation and acquiescence on renewal of no material changes, as well as Defendants' earlier representations through their broker, XL Specialty issued the Policy.

## POLICY PROVISIONS

18. The Policy contains the following provisions:

### COMMERCIAL DEALER POLICY

**A. AGREEMENT**

We will provide the insurance described in this Policy in return for the Premium and compliance with all applicable provisions of this Policy.

\* \* \*

**D. EXCLUSIONS**

We will not pay for a "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event.

\* \* \*

**12.** Any fraudulent, dishonest, or criminal act or acts by:

> **a.** You, anyone else with an interest in the Covered Property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or

4

**b.** Anyone entrusted with the Covered Property. This exclusion does not apply to a carrier for hire.

### INSURANCE CLAIM

19. On October 27, 2024, Defendants reported the loss of stamp inventory due to a fire at their warehouse located at 32 Jefferson Street, Monticello, New York (the "Claim").

20. Three months later, on January 30, 2025, in support of the Claim, Defendants submitted to XL Specialty an excel spreadsheet of damaged stamp inventory with 304 rows, identifying a "quantity" of 3,153,139 items, with a "Total Selling Price Value of $23,691,377.36. Based on the Policy valuation of less 15%, Defendants presented "as part of [their] claim an inventory representing $20,137,670." Defendants reserved the right to amend the Claim if needed because "only a portion of the 900 pallets that were affected have been valued, to date."

21. By letter dated February 28, 2025, XL Specialty exercised its right under the Policy to examine Defendants' books and records and to make inspections and surveys by seeking an Examination Under Oath and the production of various documents relating to the Claim. XL Specialty also reserved all rights under the Policy, including but not limited to the right to seek rescission and to deny coverage to the extent the Claim was excluded (for example, due to fraudulent, dishonest or criminal acts, conduct or statements).

22. On May 25, 2025, Defendants advised XL Specialty that they were working on a "revised damages inventory."

23. On July 18, 2025, nine months after the fire loss, Defendants submitted a new excel spreadsheet of damaged inventory in support of the Claim, this time with 517 rows, identifying a "quantity" of 6,443,956 items, with a "Total Selling Price Value" of $55,170,147.99. Based on the Policy valuation of less 15%, Defendants presented a substantially increased Claim of $46,894,625.79.

24. On September 9, 2025, XL Specialty was finally able to conduct an Examination Under Oath (EUO) of Samuel Malamud, who testified on behalf of Defendants. Just prior to the EUO, Defendants presented XL Specialty with a third spreadsheet in support of the Claim. According to the spreadsheet, and confirmed by Malamud, the new list had 56,240 separate rows that identified 334,930,491 (approximately 335,000,000) inventory items. Based on an average price for sale of $10 per item, this amounted to a total selling price value of $3,350,000,000 for the stamp inventory stored at the 32 Jefferson St., Monticello, location. According to Malamud, the "selling price" was the same as the "market price."

25. Malamud testified that he did not know why Defendants represented in their insurance application that the value of inventory was $15 million when the inventory was in fact supposedly $3.35 billion.

26. Malamud was unable to offer any credible basis for Defendants' drastically and materially changing inventory valuation from January 2025 ($23,691,377), to July 2025 ($55,170,148), to September 2025 ($3,350,000,000).

27. On October 17, 2025, Defendants provided copies of profit and loss statements from 2019 to 2024. These statements show consistently decreasing revenue and confirm that Defendants were operating at a substantial loss in every year except 2020, when one of the Defendants, Ideal Stamp, netted income of just $15,873. This contradicts Defendants' representation that they had inventory worth $3.35 billion.

### NOTICE OF RESCISSION & DECLINATION

28. XL Specialty notified Defendants that it was rescinding the Policy and tendered the premium.

6

29. Defendants concealed and/or mispresented material facts and circumstances that XL Specialty justifiably relied on when issuing the Policy. Had Defendants disclosed to XL Specialty the true facts, XL Specialty would not have issued any policy to Defendants or would not have issued the Policy.

30. In the alternative, XL Specialty declined coverage on the grounds that the Claim is barred by Exclusion D(12) of the Policy as set forth above.

## COUNT I
### (Rescission of the Policy)

31. XL Specialty repeats and reiterates Paragraphs 1-30 above as if set forth at length herein.

32. Defendants made misrepresentations and omissions of material fact concerning the value of their inventory when applying for insurance coverage from XL Specialty.

33. Defendants made these misrepresentations and omissions of material fact with full knowledge and expectation that XL Specialty would rely on those representations, which were a material and critical part of XL Specialty's consideration of the risk and determination to issue the Policy.

34. XL Specialty justifiably relied on Defendants' representations in determining whether to issue the Policy.

35. If XL Specialty had known the true facts, XL Specialty would not have issued any policy to Defendants or would not have issued the Policy.

36. XL Specialty is therefore entitled to a declaration that the Policy is rescinded and void *ab initio*.

## COUNT II
### (No Coverage Under the Policy)

37. XL Specialty repeats and reiterates Paragraphs 1-36 above as if set forth at length herein.

38. In the alternative, if the Policy is not rescinded, there is no coverage under the Policy for the Claim.

39. Based on Defendants submissions to XL Specialty in support of their Claim, including but not limited to their materially increasing inventory valuations, Defendants Claim is excluded by the following Policy exclusion:

> **12.** Any fraudulent, dishonest, or criminal act or acts by:
>
> **a.** You, anyone else with an interest in the Covered Property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of employment; or
>
> **b.** Anyone entrusted with the Covered Property. This exclusion does not apply to a carrier for hire.

40. XL Specialty is therefore entitled to a declaration that there is no coverage under the Policy for the Claim.

**WHEREFORE**, XL Specialty prays for the following relief:

a. a declaration that the Policy is void *ab initio;*

b. in the alternative, if the Policy is not rescinded, a declaration that there is no coverage under the Policy for the Claim;

c. an award of XL Specialty's attorneys' fees and costs; and

d. for such other relief as the Court may deem equitable and just.

Dated: New York, New York
January 30, 2026

        MOUND COTTON WOLLAN & GREENGRASS LLP

By: _____
Lloyd A. Gura
Amy J. Kallal
One New York Plaza
New York, New York 10004
(212) 804-4200
LGura@moundcotton.com
AKallal@moundcotton.com

*Attorneys for Plaintiff XL Specialty Insurance Company*

9