| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>-against-<br><br>IDEAL STAMP COMPANY AND INTER GOVERNMENTAL PHILATELIC CORP., D/B/A IMPERIAL MINT,<br><br>Defendant. | **Case No.:** 1:26-CV-00537<br><br><br>**ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND JURY DEMAND** |

Defendants, Ideal Stamp Company and Inter Governmental Philatelic Corp., d/b/a Imperial Mint (collectively, "Defendants"), by and through their undersigned counsel, answer Plaintiff's Complaint for Declaratory Judgment (the "Complaint") as follows:

### INTRODUCTION

1. Defendants admit that Plaintiff purports to seek declaratory relief with respect to policy number UMA0017371SP23A, effective December 28, 2023, through December 28, 2024. Defendants deny that Plaintiff is entitled to rescission or to any declaration that the Policy is void ab initio.

2. Denied.

3. Denied.

4. Defendants admit only that an actual controversy exists concerning the parties' respective rights and obligations under the Policy. Defendants deny that Plaintiff is entitled to the relief sought in the Complaint.

**PARTIES**

5.      Upon information and belief, admitted.

6.      Admitted.

7.      Admitted.

**JURISDICTION AND VENUE**

8.      Admitted.

9.      Admitted.

**BACKGROUND**
**INSURANCE APPLICATION & POLICY**

10.     Defendants admit that insurance application materials were submitted to Plaintiff in connection with the procurement of coverage, including on or about November 7, 2019. The application materials speak for themselves. Except as expressly admitted, the allegations of paragraph 10 are denied.

11.     Defendants admit that the FACE Insurance Services form identifies a gallery at 172 Empire Blvd, Brooklyn, New York, and identifies 32 Jefferson Street, Monticello, New York and 756 Eastern Parkway, Brooklyn, New York as "Other Named Locations." Defendants further admit that the form states an aggregate $15,000,000 figure for inventory "At Other Locations (storage, etc.)." Defendants deny that paragraph 11 otherwise characterizes the FACE form other than by its terms, and specifically deny that the form assigns the aggregate "Other Locations" figure to 32 Jefferson Street alone.

12.     Defendants admit that the FACE form contains the $1,000 highest-priced-item entry, the $10 average-price entry, and the "Market Value" entry alleged in paragraph 12. Defendants deny the remaining allegations of paragraph 12 to the extent they characterize the document other than as reflected in the document itself.

13. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations concerning communications between Plaintiff and any broker, except admit that paragraph 13 purports to quote a communication, which speaks for itself. To the extent a further response is required, the remaining allegations of paragraph 13 are denied.

14. Defendants admit that Plaintiff provided a New Submission Quote, which speaks for itself. Defendants deny the remaining allegations of paragraph 14 to the extent they characterize the document or its legal effect.

15. Admitted.

16. Defendants admit that Plaintiff provided renewal quote(s), including in 2023, which speak for themselves. Defendants deny the remaining allegations of paragraph 16 to the extent they characterize the documents or their legal effect.

17. Defendants admit that Plaintiff issued the Policy. Defendants deny the remaining allegations of paragraph 17, including any allegation that the Policy was issued in reliance on any material misrepresentation, omission, or confirmation of "no material changes" by Defendants, or that there were material changes.

## POLICY PROVISIONS

18. Defendants admit that the Policy contains provisions, including the provisions quoted in paragraph 18. The Policy speaks for itself as to its complete contents and legal effect.

## INSURANCE CLAIM

19. Admitted.

20. Defendants admit that, on or about January 30, 2025, they submitted a spreadsheet in support of the Claim and that the spreadsheet contained 304 rows, a quantity of 3,153,139

items, and a total selling price value of $23,691,377.36. Defendants further admit that the spreadsheet stated that "only a portion of the 900 pallets that were affected have been valued, to date." Defendants deny that they sought recovery in excess of the Policy's applicable limit of $15,000,000 and deny the remaining allegations of paragraph 20.

21. Defendants admit that Plaintiff sent a letter dated February 28, 2025 seeking an Examination Under Oath and the production of documents relating to the Claim. Defendants deny the remaining allegations of paragraph 21 to the extent they characterize Plaintiff's rights under the Policy, applicable exclusions, or the legal effect of that letter.

22. Admitted.

23. Defendants admit that, on or about July 18, 2025, they submitted a supplemental spreadsheet in support of the Claim and that the spreadsheet contained 517 rows, a quantity of 6,443,956 items, and a total selling price value of $55,170,147.99. Defendants deny that they sought recovery in excess of the Policy's applicable limit of $15,000,000 and deny the remaining allegations of paragraph 23.

24. Defendants admit that Plaintiff conducted an Examination Under Oath of Samuel Malamud on September 9, 2025 and that, prior to the EUO, Defendants submitted an additional spreadsheet in support of the Claim. Defendants further admit that the spreadsheet reflected, among other things, 56,240 rows and 334,930,491 items. Defendants deny that paragraph 24 otherwise fairly or completely characterizes the spreadsheet, Mr. Malamud's testimony, or the legal effect of either, and the spreadsheet and EUO transcript speak for themselves.

25. Denied.

26. Denied.

27.     Defendants admit that, on or about October 17, 2025, they provided profit and loss statements for the years 2019 through 2024. Defendants deny the remaining allegations of paragraph 27, including Plaintiff's characterization of those statements and any purported contradiction alleged therein.

**NOTICE OF RESCISSION & DECLINATION**

28.     Defendants admit that Plaintiff sent a letter purporting to rescind the Policy and decline coverage in the alternative, and requesting instructions regarding to whom any premium refund check should be directed and mailed. Defendants deny that Plaintiff thereby rescinded the Policy, actually returned the premium, or otherwise effected a valid rescission.

29.     Denied.

30.     Defendants admit only that Plaintiff purports to decline coverage in the alternative based on Exclusion D(12)(a) and (b). Defendants deny that the Claim is barred by Exclusion D(12)(a) or (b), or any other exclusion.

**COUNT I**
**(Rescission of the Policy)**

31.     Defendants repeat and reallege their responses to paragraphs 1 through 30 as though fully set forth herein.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

## COUNT II
### (No Coverage Under the Policy)

37. Defendants repeat and reallege their responses to paragraphs 1 through 36 as though fully set forth herein.

38. Denied.

39. Denied.

40. Denied.

41. Defendants deny each and every allegation of the Complaint not specifically admitted herein.

## AFFIRMATIVE DEFENSES
### FIRST AFFIRMATIVE DEFENSE

42. The Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

43. Plaintiff's claims for rescission are barred, in whole or in part, by waiver and/or estoppel to the extent Plaintiff knew or should have known the facts it now relies upon yet nevertheless issued and/or renewed the Policy and accepted premiums.

### THIRD AFFIRMATIVE DEFENSE

44. Because Plaintiff seeks equitable relief, its claims are barred, in whole or in part, by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

45. To the extent Defendants made any misrepresentations or omissions, which is expressly denied, they were not material within the meaning of New York Insurance Law Section 3105.

## FIFTH AFFIRMATIVE DEFENSE

46. To the extent Defendants made any statements or omissions in connection with the application, renewal, or claim process, which is expressly denied, any such statements or omissions were made in response to ambiguous and/or incomplete questions, in good faith, and without intent to deceive.

## SIXTH AFFIRMATIVE DEFENSE

47. Any purported rescission was ineffective or incomplete to the extent Plaintiff failed to actually return or unconditionally tender the premium.

## SEVENTH AFFIRMATIVE DEFENSE

48. After the Loss and Claim, Plaintiff could not effect rescission solely by unilateral notice. Any purported rescission by letter was ineffective unless and until judicially determined.

## EIGHTH AFFIRMATIVE DEFENSE

49. Plaintiff did not reasonably or justifiably rely on any alleged misrepresentation or omission, which are expressly denied, and Plaintiff cannot establish that it would have declined to issue or renew the Policy on substantially similar terms absent the allegations asserted in the Complaint.

## NINTH AFFIRMATIVE DEFENSE

50. Plaintiff cannot establish the specific misrepresentation pleaded because the FACE form states a single aggregate value for inventory at "Other Locations," which is ambiguous as to allocation among the locations identified on the form.

## TENTH AFFIRMATIVE DEFENSE

51. Plaintiff is not entitled to recover attorneys' fees from Defendants because the Complaint alleges no contractual, statutory, or other legally sufficient basis for such relief.

## COUNTERCLAIMS

Defendants/Counterclaim Plaintiffs Ideal Stamp Company and Inter Governmental Philatelic Corp., d/b/a Imperial Mint (collectively, "Counterclaim Plaintiffs"), by and through their undersigned counsel, as and for their counterclaims against Plaintiff/Counterclaim Defendant XL Specialty Insurance Company ("Counterclaim Defendant"), allege as follows:

52. Counterclaim Plaintiffs repeat and reallege paragraphs 1 through 51 as though fully set forth herein.

53. Counterclaim Defendant issued Commercial Dealer Policy No. UMA0017371SP23A to Counterclaim Plaintiffs for the policy period December 28, 2023, through December 28, 2024 (the "Policy").

54. The Policy identified, among other locations, 32 Jefferson Street, Monticello, New York as a named location and provided coverage, subject to its terms, conditions, and limits, for qualifying loss to covered inventory there.

55. On October 27, 2024, during the policy period, a fire occurred at 32 Jefferson Street, Monticello, New York, causing catastrophic direct physical loss of or damage to covered stamp inventory (the "Loss").

56. Counterclaim Plaintiffs timely notified Counterclaim Defendant of the Loss and submitted Claim No. 10639863 (the "Claim").

57. Counterclaim Plaintiffs complied with all applicable conditions precedent and post-loss obligations under the Policy, or such conditions were waived, excused, or satisfied, including by producing documents and presenting a representative for an Examination Under Oath.

58. On January 30, 2026, Counterclaim Defendant sent a Notice of Rescission, Declination & Reservation of Rights purporting to rescind the Policy and alternatively deny coverage for the Claim.

## APPLICATION FOR INSURANCE

59. The application questions seeking average and maximum monthly total inventory values were accurately answered, as Counterclaim Plaintiffs believed that $15,000,000 accurately stated the value-at-risk figure for the coverage sought under the Policy.

60. The age of the stock and the market value of individual stamps varied greatly, and some items had not been reordered in decades. Counterclaim Plaintiffs sought to be fully protected in the event of a total loss and valued the inventory for insurance purposes accordingly, based on their knowledge of their own stock.

61. Counterclaim Plaintiffs have never sought from Counterclaim Defendant more than the $15,000,000 Policy limit for this Loss.

62. Upon information and belief, the Policy contains no coinsurance provision.

63. The application process did not ask for the number of individual units at risk, the age or marketability of the inventory, or the basis for the amount of insurance requested.

64. Counterclaim Defendant could have requested to inspect the inventory to better understand the value at risk, but did not do so.

## THE CLAIM

65. Thereafter, Counterclaim Plaintiffs submitted and supported Claim No. 10639863 to Counterclaim Defendant for the damaged inventory.

66. At all relevant times, Counterclaim Plaintiffs cooperated with Counterclaim Defendant's investigation of the Claim, including, without limitation, by producing documents in their

possession in response to requests, making the Subject Premises available and inviting Counterclaim Defendant to inspect and reinspect the damaged inventory there, producing Yossi Malamud for a recorded statement, and producing Samuel Malamud, Counterclaim Plaintiffs' owner and chief executive officer, for an Examination Under Oath.

67. Despite Counterclaim Plaintiffs' cooperation with Counterclaim Defendant's investigation over approximately twelve months, on or about January 30, 2026, Counterclaim Defendant sent the Notice of Rescission, Declination & Reservation of Rights, denying the Claim and alleging concealment and/or misrepresentation by Counterclaim Plaintiffs in the application for insurance.

68. The Policy was and is a valid and enforceable contract between the parties.

69. The Policy was in full force and effect on the date of the Loss.

70. At all relevant times, Counterclaim Plaintiffs fulfilled all obligations and duties required of them under the Policy, or such obligations were waived, excused, or satisfied.

71. At all relevant times, Counterclaim Plaintiffs had an insurable interest in the insured business personal property inventory.

72. Counterclaim Defendant's failures include, but are not limited to, the following:

   a. Failing to conduct a proper, prompt, reasonable, and complete investigation of the Claim, including by failing and refusing Ideal's offer to reinspect the damaged and destroyed stamp inventory to better understand the value, and by failing to take reasonable steps to evaluate the condition of the property and the circumstances surrounding this total loss before denying coverage.

   b. Failing to clearly communicate, at the time of the application for coverage and thereafter, what specific information, documentation, and/or inventory detail it

required concerning the insured property, including the number of stamps at risk and the age or marketability of the inventory, and failing to raise any such issue prior to the Loss.

c. Failing to afford Counterclaim Plaintiffs the full rights and benefits available under the Policy by abruptly denying the Claim and purporting to rescind the Policy without a fair opportunity to address the alleged concerns, including, to the extent provided by the Policy, appraisal rights.

d. Failing and refusing to pay the amounts due under the Policy despite Counterclaim Plaintiffs' compliance with their policy obligations.

e. Forcing litigation on the insureds in violation of both the Unfair Claims Settlement Practice Act and regular business practices.

73. The foregoing conduct constitutes a material breach of the Policy, including the covenant of good faith and fair dealing implied in the insurance contract.

74. Counterclaim Defendant's breach and bad-faith claims-handling conduct were a proximate cause of consequential damages to Counterclaim Plaintiffs.

75. At the time of contracting, the parties knew or should have known that a wrongful disclaimer, wrongful rescission, and bad-faith handling of a total-loss claim would cause Counterclaim Plaintiffs to incur consequential losses, including legal fees, litigation expenses, and soft costs.

76. Counterclaim Plaintiffs seek recovery of consequential damages recoverable under New York law, including under *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,* 10 N.Y.3d 187 (2008), and *Panasia Estates, Inc. v. Hudson Ins. Co.,* 10 N.Y.3d 200 (2008).

77. Counterclaim Plaintiffs have incurred and anticipate incurring additional consequential damages resulting from Counterclaim Defendant's breach, in an amount to be determined at trial.

78. As a direct and proximate result of Counterclaim Defendant's breach, Counterclaim Plaintiffs have sustained damages in an amount to be determined at trial, including covered policy benefits in an amount not exceeding the applicable Policy limit of $15,000,000, together with interest, costs, and consequential damages to the extent proven.

## FIRST COUNTERCLAIM
### (Breach of Contract)

79. Counterclaim Plaintiffs repeat and reallege paragraphs 52 through 78 as though fully set forth herein.

80. Counterclaim Defendant breached the Policy by wrongfully denying coverage for the Loss and by failing and refusing to pay benefits due under the Policy.

81. Counterclaim Plaintiffs are entitled to recover contract damages, together with prejudgment interest, consequential damages to the extent proven, and such other relief as the Court deems just and proper.

## SECOND COUNTERCLAIM
### (Declaratory Judgment)

82. Counterclaim Plaintiffs repeat and reallege paragraphs 79 through 81 as though fully set forth herein.

83. An actual and justiciable controversy exists between the parties concerning their respective rights and obligations under the Policy, including whether the Policy was valid and in force on the date of the Loss, whether Counterclaim Defendant validly rescinded the Policy, and whether the Claim is barred by Exclusion D(12)(a) or (b) or otherwise.

84. Counterclaim Plaintiffs contend that the Policy was valid and in full force and effect on October 27, 2024, that Counterclaim Defendant did not validly rescind the Policy, and that the Loss and Claim are covered under the Policy.

85. Counterclaim Plaintiffs further contend that Exclusion D(12)(a) and/or (b) do not bar the Claim and that Counterclaim Defendant is obligated to provide coverage for the Claim up to the applicable Policy limit, subject to proof of loss.

86. Accordingly, Counterclaim Plaintiffs are entitled to a declaration that: (a) the Policy was valid and in full force and effect on October 27, 2024; (b) Counterclaim Defendant did not validly rescind the Policy; (c) Exclusion D(12)(a) and/or (b) do not bar coverage for the Claim; and (d) Counterclaim Defendant must provide coverage for the Claim in accordance with the Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendants/Counterclaim Plaintiffs respectfully demand judgment as follows:

A. Dismissing the Complaint with prejudice and denying Plaintiff all requested relief;

B. Awarding Counterclaim Plaintiffs damages on the First Counterclaim up to the applicable Policy limit of $15,000,000;

C. Awarding Counterclaim Plaintiffs consequential damages;

D. Declaring that the Policy was valid and enforceable on October 27, 2024, and was not validly rescinded;

E. Declaring that the Loss and Claim are covered under the Policy and are not barred by Exclusion D(12)(a) or (b);

F. Awarding Counterclaim Plaintiffs their attorneys' fees and costs incurred in defending this action, as permitted by law;

G. Awarding Counterclaim Plaintiffs prejudgment interest, post-judgment interest, costs, and disbursements; and

H.    Granting Counterclaim Plaintiffs such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendants/Counterclaim Plaintiffs demand a trial by jury on all issues so triable.

Dated: New York, New York
      April 16, 2026

**WILKOFSKY FRIEDMAN
KAREL & CUMMINS**

By:s/ *Roman Rabinovich*
    Roman Rabinovich (9125)
    Jonathan Wilkofsky
    Jason Fratus
    299 Broadway, Suite 1310
    New York, New York 10007
    (212) 285-0510
    Romanlaws@gmail.com
    jon@wfkclaw.com
    Jason@wfkclaw.com
    *Attorneys for Defendants/Counterclaim*
    *Plaintiffs*
    *Ideal Stamp Company and Inter*
    *Governmental Philatelic Corp., d/b/a*
    *Imperial Mint*